**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAUL GALLAGHER,<br><br>    Plaintiff,<br><br> v.<br><br>ADAMAS BUILDING SERVICES, *et al.*,<br><br>    Defendants. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br>No. 20-13926 (KMW-SAK)<br><br>**OPINION** |

APPEARANCES:

David R. Castellani, Esquire
Castellani Law Firm, LLC
450 Tilton Road, Suite 245
Northfield, NJ 08225
 Counsel for Plaintiff

Barry Alan Kozyra, Esquire
Kozyra & Hartz, LLC
354 Eisenhower Parkway, Suite 2300
Livingston, NJ 07039
 Counsel for Defendants

**WILLIAMS, District Judge:**

**I. INTRODUCTION**

This matter comes before the Court on Defendants Adamas Building Services ("Adamas") and Peter Chircio's ("Chircio" and together with Adamas, "Defendants") Motion for Summary Judgment and included in said motion a Statement of Material Facts ("Defs. SMF") (ECF No. 22). Plaintiff Paul Gallagher ("Plaintiff") filed a Response opposing the Motion for

Summary Judgment and responding to Defendants' SMF (ECF No. 28). Defendants subsequently filed a Reply addressing the arguments made in Plaintiff's Response (ECF No. 29). The Court held oral argument concerning this Motion on September 1, 2022. For the reasons set forth below, Defendants' Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**.

## II.   BACKGROUND

### A.   Factual Background

This case concerns an employee's claim for employment discrimination and retaliation in connection with taking leave and seeking emergency paid time off due to a suspected Covid-19[1] diagnosis. Plaintiff was employed with Defendants as a security guard and was assigned to work in the Ocean Club in Atlantic City, NJ. Defs. SMF ¶ 85. Below is a recitation of the relevant facts and events as provided in the Defendants' SMF and Exhibits accompanying the Motion for Summary Judgment.

In early April 2020, Plaintiff felt sick and believed he was experiencing symptoms of Covid-19. Defs. SMF ¶ 90. On April 8, 2020, when his symptoms worsened, Plaintiff was advised to go to the Emergency Room ("ER"). Defs. SMF ¶ 92. Plaintiff informed his employer about the situation and, in turn, was told that he needed to provide a negative Covid test and a doctor's note to come back to work. Defs. SMF ¶ 93. That same day, Plaintiff went to the hospital due to his Covid symptoms in light of his cardiovascular issues. Defs. SMF ¶¶ 94-95. Plaintiff claims that while in the ER, Plaintiff was told that he had Covid, but he was never definitively tested, and the discharge notes indicate that "At this time, we are not able to determine your status with respect to the Coronavirus (COVID 19) because we do not have a

---

[1] Because the parties and underlying materials use Covid-19 and coronavirus interchangeably, the Court will similarly use these terms.

means of testing available. You must follow the recommendations as published by the Centers for Disease Control (CDC)." Defs. MSJ, Ex. 28; Defs. SMF ¶¶ 98-101. On April 10, 2020, Plaintiff had a telemedicine visit with Southern Jersey Medical Centers, where he was advised that he should self-quarantine for the next 14 days, or for at least 72 hours after symptoms resolve, whichever is longer. Defs. MSJ, Ex. 33.

During this same time, on April 9, 2020, Plaintiff reached out to his supervisors about emergency sick pay provided by the federal coronavirus legislation, the Families First Coronavirus Response Act ("FFCRA"). In those communications, Plaintiff also indicated that he was in communication with the federal and state Departments of Labor concerning employee protections and benefits provided under the legislation. Defs. SMF ¶¶ 115-118; Defs. MSJ, Exs. 30, 31.

On April 12, 2020, Plaintiff informed his supervisors that he was misdiagnosed. Def. SMF ¶ 127. On April 20, 2020, Plaintiff texted Chircio a photo of a medical document and asked to confirm when he could return to work. Defs. SMF ¶ 132; Defs. MSJ, Ex. 36. Chircio told him that he could return on April 23, 2020. Defs. SMF ¶ 133; Defs. MSJ, Ex. 37. On April 22, 2020, Plaintiff texted Chircio about reinstatement at his workplace, stating "Executive Order 103 Signed by Phil Murphy states that I am protected from not being reinstated at my workplace due to fear of COVID19. I am not concerned what [the building] has requested . . . it is NJ State Law!" Defs. MSJ, Ex. 39. According to an undated email from the Ocean Club Tower's Tom Hunt to Chircio and Gary Treamont indicating "I thought we discussed that [Plaintiff] was not going to return to this site. As you know, his actions caused wide spread alarm among the staff and residents. We will need to discuss this in more detail if he is going to return to work here." Defs. MSJ, Ex. 38. On April 23, 2020, Marlene Rike of the United States Department of Labor

3

emailed Humberto Rivera at Adamas, responding to a request by Mr. Rivera, stating "Since you are a covered employer, the employee (Paul Gallagher) can ask for the 2 week leave and be paid as he provided a note from the hospital and the doctor telling him to self-quarantine. The employee also needs to be restored to his position or an equivalent position as soon as possible. Please email me when you will be in compliance. Thank you." Defs. MSJ, Ex. 40.

It is undisputed that "Plaintiff stated that he believed he was terminated on April 22, 2020 from a call from Chircio." Def. SMF ¶¶ 146. It is similarly undisputed that "[n]obody at Adamas ever told Plaintiff that he was terminated or that he was terminated because of Plaintiff's contacts with any governmental agencies." Def. SMF ¶ 147. However, there is a dispute amongst the parties concerning what Plaintiff was told concerning his return to work and whether he was told he was being reassigned to a different location, specifically to a position located in Long Branch, NJ. Defs. SMF ¶¶ 135-144; Pltf. SMF Responses to ¶¶ 135-144.

### B. Procedural Background

On October 5, 2020, Defendants filed a Notice of Removal, bringing this case before the federal courts (ECF No. 1). The parties have engaged in discovery and discovery closed on August 30, 2021. June 28, 2021 Scheduling Order, ECF No. 15. On January 10, 2022, Defendants filed the present Motion for Summary Judgment. Plaintiff opposes the Motion and on February 14, 2022 filed a Response. On February 22, 2022, Defendants subsequently filed a Reply addressing the arguments raised in Plaintiff's Response. As requested in Defendants' Motion, the Court held oral argument on September 1, 2022 to address the claims and arguments made within the parties' briefs and accompanying documents.

### III. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) ("A fact is material if—taken as true—it would affect the outcome of the case under governing law."). Moreover, "[a] dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini*, 795 F.3d at 416 (quoting *Anderson*, 477 U.S. at 248).

The moving party bears the burden of identifying portions of the record that establish the absence of a genuine issue of material fact. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then "shifts to the nonmoving party to go beyond the pleadings and 'come forward with 'specific facts showing that there is a *genuine issue for trial.*'"" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). To survive a motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). When considering a motion for summary judgment, the court views the facts and all reasonable inferences drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

## IV.  DISCUSSION

### A.  The Families First Coronavirus Response Act

In light of the novel 2019 coronavirus epidemic, on March 18, 2020 Congress passed the Families First Coronavirus Response Act ("FFCRA") that, among other things provided emergency supplemental appropriations for the fiscal year ending September 30, 2020, including emergency employment benefits related to employees who believed they had contracted coronavirus, as well as protections for employees who have or were believed to have contracted coronavirus.

While Plaintiff does not cite to any specific provision within the act under which he can assert a cause of action, section 5102 provides that "[a]n employer shall provide to each employee employed by the employer paid sick time to the extent that the employee is unable to work (or telework) due to a need for leave because . . . (2) The employee has been advised by a health care provider to self-quarantine due to concerns related to COVID–19[, or] (3) The employee is experiencing symptoms of COVID–19 and seeking a medical diagnosis," among other reasons. FAMILIES FIRST CORONAVIRUS RESPONSE ACT, PL 116-127, March 18, 2020, 134 Stat 178.  Additionally, section 5104 of the FFCRA, in relevant part, prohibits an employer from discharging, disciplining, or discriminating against an employee who (1) takes leave in accordance with this Act; and (2) has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act (including a proceeding that seeks enforcement of this Act).  FAMILIES FIRST CORONAVIRUS RESPONSE ACT, PL 116-127, March 18, 2020, 134 Stat 178.

The FFCRA further provides that an employer who willfully violates section 5104 shall be subject to the penalties described in sections 16 and 17 of the Fair Labor Standards Act of

6

1938 ("FLSA") (29 U.S.C. §§ 216; 217), which creates a right of action. In relevant part, section 216 of the FLSA provides that:

> Any employer who violates the provisions of section 206 or section 207 [concerning minimum wage and maximum hours worked] of this title **shall be liable to the employee or employees affected** in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Any employer who violates the provisions of section 215(a)(3) of this title **shall be liable for such legal or equitable relief as may be appropriate** to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages. . .

29 U.S.C.A. § 216 (West) (emphasis added).

Here, Plaintiff's Amended Complaint asserts that he was originally not paid the emergency sick leave as required by federal and state law; however, he was eventually paid his two weeks (or 80 hours) of emergency sick leave. Amended Complaint, ECF No. 1 at 12-13, ¶ 6. Additionally, the Amended Complaint alleges that Plaintiff was wrongfully terminated in violation of the FFCRA "and in retaliation for contacting the United States Department of Labor and threatening the Defendants that he was going to file a complaint with the United States Department of Labor" with respect to his Emergency Sick Leave Pay. Amended Complaint, ECF No. 1 at 13, ¶¶ 7-8. Turning to the first claim for wrongful termination in violation of the FFCRA, the facts in this case establish that Plaintiff took leave in connection with the Act because he believed he had been diagnosed with Covid-19 and was advised to self-quarantine. Def. SMF ¶¶ 122-123; Defs. MSJ, Ex. 33. Additionally, there is no dispute that Plaintiff contacted the Department of Labor ("DOL") concerning his employment benefits related to Covid-19, including contacting the DOL concerning the emergency sick paid leave benefits, and employee protections. Def. SMF ¶¶ 116-118; Defs. MSJ, Exs. 30, 31. Accordingly, the only remaining issue concerning Defendants' liability with respect to the FFCRA violation and

retaliation claims is whether Defendants' conduct was willful to permit enforcement.

The Third Circuit has explained that "willfulness under the FLSA is established where 'the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA.].'" *Stone v. Troy Constr., LLC*, 935 F.3d 141, 150 (3d Cir. 2019) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S. Ct. 1677, 1681, 100 L. Ed. 2d 115 (1988)). Applying that standard here in light of the summary judgment standard, the timeline of events create an inference that a reasonable factfinder could conclude that Defendants were at least reckless in reassigning Plaintiff to an unreasonable location, thereby violating the FFCRA. *See id.* 150-51. Therefore, Defendants' Motion for Summary Judgment is **denied** with respect to Plaintiff's claims under the FFCRA.

### B.    New Jersey Assembly Bill 3848

In connection with the ongoing public health emergency presented by the novel Coronavirus, on March 20, 2020, the New Jersey state government enacted Assembly Bill 3848, which established that:

> An employer shall not, during the Public Health Emergency and State of Emergency declared by the Governor in Executive Order 103 of 2020 concerning the coronavirus disease 2019 pandemic, terminate or otherwise penalize an employee if the employee requests or takes time off from work based on the written or electronically transmitted recommendation of a medical professional licensed in New Jersey that the employee take that time off for a specified period of time because the employee has, or is likely to have, an infectious disease, as defined in section 2 of P.L.2005, c. 222 (C.26:13-2), which may infect others at the employee's workplace. The employer shall not, following that specified period of time, refuse to reinstate the employee to employment in the position held when the leave commenced with no reduction in seniority, status, employment benefits, pay or other terms and conditions of employment.

N.J. Stat. Ann. § 34:11D-12 (West); New Jersey Assembly Bill 3848. The statute further provided a cause of action available to workers of employers who have violated the law, stating, in relevant part that "[i]f an employer violates the provisions of section 1 of this act, the

employee affected by the violation may . . . initiate an action in a court of competent jurisdiction, to seek reinstatement to employment." N.J. Stat. Ann. § 34:11D-13 (West).

Here, Plaintiff's Amended Complaint asserts that he was wrongfully terminated in violation of "New Jersey Governor Murphy's Executive Order 103[2]." Amended Complaint, ECF No. 1 at 13, ¶¶ 7-8. In their Motion Defendants attack the fact that Plaintiff never tested positive for Covid-19; however, the law only requires that an employee's absence is "based on the written or electronically transmitted recommendation of a medical professional licensed in New Jersey that the employee take that time off for a specified period of time because the employee has, or is likely to have, an infectious disease." N.J. Stat. Ann. § 34:11D-12 (West); New Jersey Assembly Bill 3848. Plaintiff presented a letter from a medical professional indicating that he should not return to work and recommending a 14-day self-quarantine based on Plaintiff's presenting symptoms, thereby creating a dispute of material fact concerning whether Plaintiff is protected under the statute. Defs. MSJ Ex. 33. Moreover, the parties present differing evidence concerning whether Plaintiff was terminated or otherwise penalized, thereby creating an issue of material fact as to whether Defendants in fact violated this statute. Therefore, Defendants' Motion for Summary Judgment is **denied** with respect to Plaintiff's claims under the New Jersey Assembly Bill 3848.

### C.    The New Jersey Conscientious Protection Act

The purpose of the Conscientious Employee Protection Act ("CEPA") "is to protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct." *Abbamont v. Piscataway Twp. Bd. of Educ.*, 138 N.J. 405, 431, 650 A.2d 958, 971 (1994); *see also* 18 N.J. Prac., Employment

---

[2] The Court understands the parties cite to Governor Murphy's Executive Order 103 when they seek to implicate the New Jersey Assembly Bill 3848.

Law § 5.1 (2d ed.) (citing N.J.S.A. 34:19-1 to 34:19-8). Specifically, CEPA prohibits an employer from taking any retaliatory action against an employee because the employee "[d]iscloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer . . . with whom there is a business relationship, that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law." N.J. Stat. Ann. § 34:19-3a(1) (West). Because CEPA is a "broad, remedial legislation," it must "'be construed liberally' to effectuate its important social goal." *Stapleton v. DSW, Inc.*, 931 F. Supp. 2d 635, 638 (D.N.J. 2013) (citing *D'Annunzio v. Prudential Ins. Co. of Am.*, 192 N.J. 110, 120, 927 A.2d 113, 119 (2007)).

Courts in this district apply the three-step *McDonnell Douglas* burden-shifting framework, used in various other employment discrimination contexts, to CEPA claims. *Bowles v. City of Camden*, 993 F. Supp. 255, 262 (D.N.J. 1998). The Supreme Court has summarized the framework as follows:

> The Court in *McDonnell Douglas* set forth a burden-shifting scheme for discriminatory-treatment cases. Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. If the employer meets this burden, the presumption of intentional discrimination disappears, but the plaintiff can still prove disparate treatment by, for instance, offering evidence demonstrating that the employer's explanation is pretextual.

*Raytheon Co. v. Hernandez*, 540 U.S. 44, 50 (2003) (citations omitted).

As a threshold matter in proving a CEPA claim, a plaintiff must meet his or her prima facie burden of demonstrating that he or she reasonably believed the employer's conduct to be in violation of either a law, rule, regulation, or clear mandate of public policy. Establishing A CEPA Claim, 18 N.J. Prac., Employment Law § 5.7 (2d ed.); *Dzwonar v. McDevitt*, 177 N.J. 451, 461-62, 828 A.2d 893, 900 (2003). Once the plaintiff has established this issue, he or she

must then prove the following three elements: (1) the plaintiff performed a whistleblowing activity described in CEPA; (2) the plaintiff was subjected to an adverse employment action; and (3) a causal connection existed between the plaintiff's protected activity and the adverse employment action. *Id.* at 461-62. Notably, no party challenges whether Plaintiff satisfied the notice requirement provided in N.J. Stat. Ann. § 34:19-4[3], and the Court acknowledges that Plaintiff did notify his supervisor about what he believed to be a violation of the federal and state New Jersey coronavirus-related laws. Therefore, the Court will analyze the merits of Plaintiff's CEPA claim.

Here, Plaintiff has established the prima facie elements for a CEPA claim. As an initial matter, Plaintiff believed that his employer, Adamas, was violating both federal and state law by refusing to pay him specific emergency sick leave, and further reassigning or constructively terminating him for taking leave because he suspected he had Covid-19, thereby satisfying the threshold inquiry. Def. SMF ¶¶ 114-118. Next, Plaintiff performed a whistleblowing activity pursuant to section 3a by notifying his supervisors as well as a representative from the Department of Labor that he suspected his employer of violating federal and state laws providing employee protections in connection with Covid-19. Def. SMF ¶¶ 110, 112, 114-118. Further, Plaintiff asserts that he was subject to an adverse employment action when he was reassigned to a position that was located a significant distance from his original post because Plaintiff had no reasonable way to get to the new location and thus such conduct was sufficiently severe to alter Plaintiff's conditions of employment. *See Davis v. City of Newark*, 285 F. App'x 899, 903-04

---

[3] "The protection against retaliatory action provided by this act pertaining to disclosure to a public body shall not apply to an employee who makes a disclosure to a public body unless the employee has brought the activity, policy or practice in violation of a law, or a rule or regulation promulgated pursuant to law to the attention of a supervisor of the employee by written notice and has afforded the employer a reasonable opportunity to correct the activity, policy or practice." N.J. Stat. Ann. § 34:19-4 (West).

11

(3d Cir. 2008) (explaining that for a plaintiff to establish specific conduct as an adverse employment action, the conduct "must be 'sufficiently severe as to alter the employee's compensation, terms, conditions, or privileges of employment, or to deprive or tend to deprive [him or her] of employment opportunities or otherwise adversely affect his [or her] status as an employee'") (quoting *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1296-97 (3d Cir.1997), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)); *Cardenas v. Massey,* 269 F.3d 251, 263 (3d Cir. 2001) (explaining that the conduct must be "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment"). Similarly, the Court finds that arguably by transferring Plaintiff to a new building that was a significant distance from his original place of employment making commuting unreasonable, Defendants knowingly permitted conditions so intolerable that a reasonable person subject to them would resign, thus constituting constructive discharge. *Goss v. Exxon Off. Sys. Co.,* 747 F.2d 885, 888 (3d Cir. 1984) (establishing that to determine whether an employer constructively discharged an employee, "the court need merely find that the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign"). Finally, the Court finds that the temporal proximity between Plaintiff's conduct and the adverse employment action taken against him of days and weeks is unusually suggestive of retaliatory motive and thus a causal link may be inferred. *See Budhun v. Reading Hosp. & Med. Ctr.,* 765 F.3d 245, 258 (3d Cir. 2014) ("To demonstrate a causal connection, a plaintiff generally must show 'either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.'") (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis,* 480 F.3d

259, 267 (3d Cir. 2007)); *see also Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997) (explaining that "the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred") (citations omitted).

The Court finds that Plaintiff has arguably established a prima facie case for a CEPA claim under the circumstances, and thus the burden shifts to Defendants to provide a legitimate, non-discriminatory reason for the adverse employment actions. Defendants have proffered that Plaintiff was not reassigned or otherwise terminated because he reported the FFCRA and New Jersey law violations to Chirico and a Department of Labor representative, but because Ocean Club requested Plaintiff not return because he had caused a panic within the building when he informed the residents and staff of his suspected Covid-19. Defs.' Br., ECF No. 22 at 10-12. Therefore, the burden returns to Plaintiff to demonstrate that Defendants' proffered reason was merely pretextual for actual retaliation.

For Defendants to obtain summary judgment, they must show that Plaintiff could not raise an issue of fact that might show that Defendants' explanation was pretextual. *See Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir.1989). Likewise, "[t]he Plaintiff's burden on summary judgment is to 'point to some evidence,' direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Constant v. Mellon Financial Corporation*, 247 F. App'x 332, 337-38 (3d Cir. 2007) (citing *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir. 1994)). The Court takes this opportunity to note that the evidence of Defendants' legitimate reason for reassigning Plaintiff is weak, and while the client, Ocean Club Towers, may have been apprehensive about Plaintiff returning, Defendants are still required to comply with employment discrimination laws.

Moreover, the Third Circuit has explained that determinations of discrimination inherently rely on an examination of intent, which is best left to the jury. *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1071-72 (3d Cir. 1996) ("The role of determining whether the inference of discrimination is warranted must remain within the province of the jury, because a finding of discrimination is at bottom a determination of intent."); *see also Thurston*, 941 F. Supp. 2d at 534 FN 10 (D.N.J. 2008) ("The determination of whether the reason given was pretextual should be left for the jury because a 'finding of discrimination is at bottom a determination of intent.'"). Therefore, Defendants' Motion for Summary Judgment is **denied** with respect to Plaintiff's claim under CEPA.

### D.   Plaintiff's Remaining Claims

Finally, the Defendants' Motion for Summary Judgment is **granted** with respect to Plaintiff's remaining claims. During oral argument, counsel confirmed that Plaintiff has waived any public policy claim under *Pierce v. Ortho Pharmaceutical Corp.* given his existing CEPA claim, and further informed the Court that Plaintiff is not pursuing any claims under the New Jersey Law Against Discrimination or asserting any violations of federal or state Department of Labor regulations. Therefore, Plaintiff's *Pierce* claim, NJLAD claims, and claims for violations of the United States or New Jersey Departments of Labor regulations are hereby **dismissed with prejudice**.

### V.   CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**. Defendants' Motion with respect to Plaintiff's claims pursuant to the FFCRA, the New Jersey Assembly Bill 3848, and the New Jersey Conscientious Protection Act is **DENIED** and those claims will move forward. Defendants'

Motion with respect to Plaintiff's remaining claims is hereby **GRANTED** and those claims are therefore dismissed with prejudice at this time.

Dated: September 8, 2022

                                            KAREN M. WILLIAMS
                                            United States District Judge